S. LANE TUCKER
United States Attorney

CARLY S. VOSACEK
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, AK 99701
Phone: (907) 456-0245
Email: carly.vosacek@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESUS AVITIA-ENRIQUEZ, AND STEVEN KYLE PHILLIPS,<br><br>Defendants. | No. 4:23-CR-00002-RRB-SAO |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPRESS (DKT. 55)**

In 2021, law enforcement arrested Fairbanks drug dealer Michael Meath outside his house. While the arrest was taking place, two of his coconspirators—defendants Jesus Avitia-Enriquez (Avitia) and Steven Kyle Phillips (Phillips) —were inside, frantically trying to hide evidence of the drug trafficking. Law enforcement entered to secure the residence, obtained a search warrant, and secured ample evidence of the defendants' role in the conspiracy, which forms the basis of the current indictment. Avitia has filed a motion

to suppress all the evidence in the case, arguing that it was illegal for law enforcement to enter Meath's house while the defendants tried to conceal and destroy evidence. Phillips has joined in the motion. There are two independent reasons why the motion should be denied. First, the entry was justified under the circumstances both as a protective sweep and to preserve the integrity of the evidence inside. And second, the search warrant for the residence was valid without relying on anything obtained during the warrantless entry.

## BACKGROUND

Fairbanks DEA began investigating Michael Patrick Meath's drug trafficking activities in Fairbanks, Alaska in November 2017. Meath lived and was in a relationship with Lisa Cartier (hereinafter, "Cartier"). Cartier owns a residence on Shannon Drive in Fairbanks. Meath and both defendants were co-conspirators who used the Shannon Drive residence to sell controlled substances.

On October 24, 2019, members of Fairbanks Area Narcotics Task Force (FANT) were conducting surveillance on Meath at the Shannon Drive home. FANT had information that Meath had received a large quantity of methamphetamine and heroin that he was preparing to distribute. Cartier and Meath exited the residence, Meath carrying a backpack, and they departed in a grey truck. The vehicle was stopped for a traffic violation. K9 units alerted on the truck, agents secured a warrant to search the vehicle. Inside the backpack, the officers recovered a loaded Colt .45 semi-automatic pistol, 4 digital scales, multiple Ziplock baggies, and approximately 60 grams of heroin and 1.25 pounds of methamphetamine.

U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO
Page 2 of 11
Case 4:23-cr-00002-RRB   Document 68   Filed 10/24/23   Page 2 of 11

On January 18, 2021, the federal Grand Jury indicted Meath, and a warrant for his arrest was issued. On January 25, 2021, investigators conducted additional surveillance on Shannon Drive, where they knew Meath lived, in an effort to apprehend him. At approximately 1:00 p.m., investigators observed Meath pull into the driveway in a Dodge Ram truck that was pulling a trailer. Agents observed Avitia exit the residence and assist Meath with the trailer. Meath left shortly thereafter and then returned with Marc Wahlgren, another known drug dealer. Both Meath and Wahlgren entered the house. Agents watched Meath make multiple trips from the house carrying garbage bags, handbags and a backpack and placing them in his vehicle. Meath was inside the residence as agents approached to arrest him. Meath exited the residence and got into the Dodge Ram as they made contact.

Due to the guns and drugs that were recovered in the prior contact, agents believed Meath could be armed. A brief search of the area of the Ram within Meath's reach located a loaded .44 revolver in the center console and a black backpack behind the center console containing approximately $65,500.00, 124.71 grams of heroin, 216.79 grams of methamphetamine, and 105.2 grams of fentanyl pills. Meath advised agents that Wahlgren was in the residence and asked officers to make contact with him.

Officers were aware this was the second time Meath has been arrested with large amounts of drugs and a firearm leaving the Shannon Drive residence. Officers were aware Wahlgren was in the residence and that Avitia had recently been in the residence. Officers were aware the residence was being used in Meath's drug trafficking operation. Because officers expected that there was additional evidence pertaining to Meath's drug trafficking
U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO

operation in the residence and knew there was at least person inside who could destroy evidence and endanger them, they entered the residence to ensure officer safety and preserve evidence pending a search warrant application.

As it turned out, Wahlgren, Avitia, and Phillips were all inside. All three were detained for observed parole/probation violations. The rooms were cleared to ensure no one was hiding in the residence, including the large couch cushions. While clearing the residence, and within the scope of the protective sweep, officers saw evidence of controlled substance use and distribution in plain view. After clearing the residence, agents obtained a warrant to search it. During the search, they recovered approximately 126.44 grams of methamphetamine, 124.71 grams of heroin, and 63.59 grams of blue fentanyl pills. All these substances were packaged in multiple baggies, readily available for sale and distribution. Agents also seized a black cube surveillance camera with a micro-SD card from the living room, occupied by the defendants.

After obtaining a separate search warrant for the micro-SD card, it contained audio and video recordings of interactions inside the residence. The recordings show multiple sales of controlled substances and use of controlled substances. It preserved the protective sweep and ultimate search of the residence by law enforcement. It also showed the attempted destruction of evidence by Avitia and Phillips when notified of law enforcement's presence.

**ARGUMENT**

U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO
Page 4 of 11
Case 4:23-cr-00002-RRB   Document 68   Filed 10/24/23   Page 4 of 11

# 1. The Warrantless Entry of 379 Shannon Drive Was Reasonable as a Protective Sweep and to Preserve Evidence.

The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests". *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). The presumption against a warrantless search of a residence is overcome where "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *United States v. Iwai*, 930 F.3d 1141, 1144 (9th Cir. 2019) (citing *Kentucky v. King*, 563 U.S. 452, 460 (2011)). It is well-settled that when "officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that evidence or contraband will imminently be destroyed" they may enter a residence to prevent the destruction of evidence. *Id*.

Warrantless searches can also be reasonable when conducted immediately following a home arrest. The Supreme Court has recognized that "unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'" *Maryland v. Buie*, 494 U.S. 325, 333 (1990). Thus, the Court has held that "the arresting officers are permitted in such circumstances to take reasonable steps to ensure their safety after, and while making, the arrest." *Id*. at 334. This exception remains true of arrests made outside a suspect's home. "If the exigencies to support a protective sweep exist, whether the arrest occurred inside or outside the residence does not affect the

reasonableness of the officer's conduct." *United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir. 1989), different aspect of holding overruled by *United States v. Ruiz*, 257 F.3d 1030, 1031 (9th Cir. 2001). The likelihood of a security threat or "destruction of evidence is the same whether the arrest is indoors or in an outside area within the sight or hearing range of an accomplice within the residence." *Id*. at 1397.

The Ninth Circuit has held that "courts must be careful not to use hindsight in limiting the ability of police officers to protect themselves as they carry out missions which routinely carry out danger." *United States v. Astroga-Torres*, 682 F.2d 1331, 1335 (9th Cir. 1982). Courts are required to consider the expertise of experienced narcotics officers as a factor in determining whether the Fourth Amendment has been satisfied, because an "untrained person, unaware of the propensity of narcotics dealers, would not consider the situation faced by an officer as dangerous is not controlling. *United States v. Castillo*, 866 F.2d 1071, 1080 (9th Cir. 1989) (citing *United States v. Bernard*, 623 F.2d 551, 560 (9th Cir. 1979)).

In *Buie*, the Supreme Court concluded that the "interest of the arresting officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack" and described two types of searches that could immediately follow an arrest, and which would not require a warrant. First, the officers' interest in their own safety justifies a search "incident to the arrest ... as a precautionary matter and without probable cause or reasonable suspicion, ... [of] closets and other spaces immediately

U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO
Page 6 of 11
Case 4:23-cr-00002-RRB   Document 68   Filed 10/24/23   Page 6 of 11

adjoining the place of arrest from which an attack could be immediately launched." Id. at 334. Second, the officers can perform a further protective sweep beyond immediately adjoining areas when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." *Id*. This "protective sweep" is not a license to search every nook and cranny of a house but is subject to two significant limitations: it "extend[s] only to a cursory inspection of those spaces where a person may be found" and lasts "no longer than it takes to complete the arrest and depart the premises." *Id*. at 335-36. The Ninth Circuit adopted this test in *United States v. Lemus*, 582 F.3d 958 (9th Cir. 2009). The reviewing court uses a "totality of the circumstances" test in determining reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266 (2002).

Immediately prior to the search in this case, Meath was arrested for the second time leaving his house in possession of a loaded firearm and large amounts of controlled substances. Officers knew Avitia had been in the residence at least two hours prior and knew Wahlgren was currently in the residence. The house was known to be a location for controlled substance distribution and sales. Officers saw a backpack containing the firearm, money, and drugs leaving the house just moments prior to the search. Under the totality of the circumstances, it was reasonable to believe that at least one coconspirator was inside the residence, and that anyone inside had been alerted to law enforcement presence. It was also reasonable to believe that any coconspirators could be armed and in possession of

U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO
Page 7 of 11
Case 4:23-cr-00002-RRB   Document 68   Filed 10/24/23   Page 7 of 11

contraband that they could and would destroy before a search warrant could be obtained. Officers had specific and articulable facts supporting these beliefs gathered over the course of long investigation involving Meath and the premises he used to distribute controlled substances. It was accordingly both reasonable and appropriate for the officers to make entry to secure the premises and protect themselves and the evidence inside.

Once inside, the officers conformed with the scope of a protective sweep and limited their activity to what was necessary to identify anyone present. The defendants argue that the scope of the search was unlawful when officers removed couch cushions. ECF No. 55 at 9. But the couch that is large, and easily capable of harboring a person—a tactic that criminals indeed employ. See, e.g., Citytv, *Criminal Hides in Couch* (Jan. 22, 2015), available at https://youtu.be/YpIoEfVMkSg.

Moreover, the evidence belies any suggestion that the sweep here was pretextual or in bad faith. The officers, who did not know they were being recorded, are captured on the defendant's surveillance system discussing a recent search where an individual hid inside a mattress for several hours while law enforcement searched the premises: it is clear that, consistent with the governing law, they were focused on limiting their search to places where people could be found.

During the legitimate scope of the protective sweep, officers saw evidence of controlled substance use and distribution in plain view. It was legal for them to observe and use this evidence.

The plain view doctrine to applies when police are lawfully in a position from which

they view an object, its incriminating character is immediately apparent, and the officers have a lawful right of access to the object: if so, they may seize the evidence without a warrant. See Horton *v. California*, 496 U.S. 128, 136–137 (1990); *Texas v. Brown*, 460 U.S. 730, 739 (1983). Here, the officers were even more solicitous of Avitia's rights than the law required: while they had legal justification to be in Avitia's room and the nature of the contraband was immediately apparent, they did not seize it until obtaining a search warrant.

Avitia argues that prior to the search, no criminal activity was occurring, and he was simply writing in a journal quietly. However, the surveillance footage shows Wahlgren entering the room and alerting Phillips and Avitia to law enforcement presence. Phillips and Avitia immediately begin to try and hide contraband—exactly the exigent circumstance that the agents wanted to forestall.

## 2. The Agents Would Have Inevitably Obtained a Valid Warrant

Even if the warrantless entry had been illegal, there would be no basis to suppress evidence. "The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant. A reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987) (citing *United States v. Driver*, 776 F.2d 807 (9th Cir.1985)).

"The task of the issuing magistrate is simply to make a practical, common-sense

U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO
Page 9 of 11
Case 4:23-cr-00002-RRB   Document 68   Filed 10/24/23   Page 9 of 11

decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). If the two sentences describing the observed drug paraphernalia were removed from the warrant affidavit, there would still be probable cause: Meath, a known drug trafficker, carried a bag containing drugs, money, and a firearm from his residence immediately prior to his arrest. "In the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). When that common-sense truism is combined with the officers' fresh observations, there was sufficient probable cause articulated in the warrant to believe evidence of Meath's drug trafficking operation would be inside the residence, and the warrant was valid. As such, the only evidence that would be subject to suppression would be the evidence that Avitia, Phillips, and Wahlgren would have destroyed in the time it took to secure a warrant—and the existence of any such evidence would itself demonstrate why there were exigent circumstances justifying an earlier, warrantless entry.

a. **The Arrest of Avitia and Phillips was valid.**

The defendants also argue that their arrests were illegal. This argument is premised entirely on the suggestion that the warrantless entry was illegal, which it was not. And once

officers entered the residence, they found Avitia and Phillips near evidence of controlled substance use and distribution. This was itself probable cause to detain and identify them. And once identified, Avitia and Phillips were further detained for observed violations of community supervision, in addition to the new criminal activity.

## CONCLUSION

For all the above stated reasons, there is no basis to suppress any evidence.

RESPECTFULLY SUBMITTED October 24, 2023 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s Carly S. Vosacek
CARLY S. VOSACEK
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2023 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s Carly S. Vosacek

U.S. v. Avitia-Enriquez, and Steven Kyle Phillips
4:23-CR-00002-RRB-SAO
Page 11 of 11
Case 4:23-cr-00002-RRB   Document 68   Filed 10/24/23   Page 11 of 11