IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>vs.<br><br>JESUS AVITIA-ENRIQUEZ, and STEVEN KYLE PHILLIPS,<br><br>                 Defendants. | Case No. 4:23-cr-00002-RRB<br><br>**ORDER DENYING<br>MOTION TO SUPPRESS**<br>**(Docket 55)** |

## I. INTRODUCTION

Before the Court is Defendant Avitia-Enriquez's Motion to Suppress, which Defendant Steven Kyle Phillips has joined.[1] The Government has opposed the motion.[2] The matter was referred to Magistrate Judge Scott Oravec, who held an evidentiary hearing on the Motion to Suppress.[3] The Government called law enforcement officers Charles Flockhart, Byron Johnson, and Caleb Reuter.[4] The Defense called no witnesses.

---

[1] Dockets 55, 62. The Government asserts that Defendant Phillips has failed to establish standing to challenge the protective sweep and subsequent search of the residence. Docket 92 at 1–2. This argument is moot in light of the Court's ultimate finding that the initial search was valid.

[2] Docket 68.

[3] The transcript of the evidentiary hearing is found at Docket 82.

[4] Docket 82 at 2.

Judge Oravec ordered supplemental briefing at the conclusion of the evidentiary hearing.[5] The Government, as well as both Defendants, filed supplemental briefing and responses.[6] Defendant Avitia-Enriquez also referenced additional exhibits, including conventionally-filed copies of video footage from inside the residence at the time of the search.[7] After the hearing, the magistrate judge was deployed to temporary active miliary duty prior to issuing a Report and Recommendation. Accordingly, the referral has been withdrawn. This Court has reviewed the briefing and the transcript of the hearing and, being fully advised, finds that the totality of circumstances justifies the officers' actions in the January 25, 2021, search. For the reasons set forth below, the Motion to Suppress is DENIED.

## II. FACTUAL BACKGROUND

Fairbanks Drug Enforcement Agency ("DEA") began investing Michael Patrick Meath's drug trafficking activities in Fairbanks, Alaska, in November 2017.[8] At that time, Meath lived with Lisa Cartier in a house at 379 Shannon Drive, which was owned by the Cartier Trust.[9] The following summary of facts is taken from the Government's briefing and testimony at the evidentiary hearing.

---

[5] Docket 79.
[6] Dockets 83, 84, 87, 90, 92.
[7] Dockets 85, 86. The Court notes that although counsel requested to conventionally file the videos at Docket 86, they had been previously lodged with the Clerk. *See* Dockets 57, 58 (text entry). This footage was obtained from Avitia-Enriquez's personal video surveillance, which was seized by agents during the search. Docket 55 at 9.
[8] Docket 68 at 1.
[9] Docket 82 at 10.

*United States v. Avitia-Enriquez, et al.*                                                                                               Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)                                                            Page 2
Case 4:23-cr-00002-RRB    Document 96    Filed 05/01/24    Page 2 of 14

On October 24, 2019, members of Fairbanks Area Narcotics Task Force ("FANT") were conducting surveillance on Meath at the Shannon Drive house. While surveilling the Shannon Drive house, members of FANT observed Meath depart the home with a backpack and get into a grey truck. Shortly after departing the house in his vehicle, Meath was stopped for a traffic violation. K9 units alerted on the truck and the agents secured a warrant to search the vehicle. Inside the backpack that was carried out of the Shannon Drive house was a loaded Colt .45 semi-automatic pistol, 4 digital scales, multiple Ziplock baggies, approximately 60 grams of heroin, and 1.25 pounds of Methamphetamine. On January 18, 2021, the federal Grand Jury indicted Meath, and a warrant for his arrest was issued. After the warrant for Meath's arrest was issued, investigators conducted additional surveillance on the Shannon Drive house, where they believed Meath lived. Meath frequently was seen at this location, although there is some suggestion in the record that Meath no longer resided at the house.[10]

On January 25, 2021, at approximately 1:00 p.m., investigators observed Meath pull into the driveway of 379 Shannon Drive in a Dodge Ram truck that was pulling a trailer. Agents observed Defendant Avitia-Enriquez exit the residence and assist Meath with the trailer. Meath shortly thereafter left and returned with Marc Wahlgren.[11] Wahlgren was known to local law enforcement as part of the local drug scene.[12] Both

---

[10] Docket 68 at 2–3.
[11] Id. at 3.
[12] One agent testified: "Mr. Wahlgren first became known to me in 2017 connected with an OCDETF case that we started here. But from that point forward, in any drug circle when we're reviewing intelligence -- when we're doing our intelligence gathering, he is always in the -- seems to be always in the circle of the drug trafficking scene." Docket 82 at 35.

United States v. Avitia-Enriquez, et al.  Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)  Page 3
Case 4:23-cr-00002-RRB   Document 96   Filed 05/01/24   Page 3 of 14

Meath and Wahlgren entered the Shannon Drive house. Agents watched Meath make multiple trips to and from the house carrying garbage bags, handbags, and a backpack and place them in the truck. Meath was inside the residence as agents first approached the residence to arrest him at 2:45 p.m.[13] As officers were approaching the house, Meath had already exited the residence and was getting into the truck as they made contact.[14] The agents conducted a brief search of the area of the truck within Meath's reach and located a loaded .44 revolver in the center console and a black backpack behind the center console containing approximately $65,000.00, 124.71 grams of heroin, 216.79 grams of methamphetamine, and 105.2 grams of fentanyl pills.[15] Defendants dispute whether or not anyone saw Meath's backpack come from inside the house.

Officer testimony indicates that, upon his arrest, Meath asked the officers to inform someone inside the house that he had been arrested.[16] Because of this request, officers went to the front door, where they knocked, but no one came to the door.[17] The officers decided to enter the house at approximately 3:05 p.m.[18] One officer testified:

> So we determined, because of Mr. Meath walking out of the residence with that backpack that contained drugs and money, and that we knew that there were people inside and the unwillingness to come to the door, we believed that inside the house still contained evidence of a crime, and then we began

---

[13] Docket 68 at 3; Docket 82 at 70.
[14] Docket 82 at 35; Docket 55 Exhibit E at 14:47:39 (2:47 p.m.) Marc Wahlgren comes into Avitia's living space and says, "There is a bunch of cops with guns walking up to Mike's truck dude. I swear to god." The timing of this also corroborates the report that states officers arrested Meath at approximately 2:45 p.m.
[15] Docket 68 at 3.
[16] Docket 82 at 36, 134, 135.
[17] *Id.* at 134–35.
[18] *Id.* at 135–36.

*United States v. Avitia-Enriquez, et al.*     Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)     Page 4
Case 4:23-cr-00002-RRB    Document 96    Filed 05/01/24    Page 4 of 14

to enter the residence to do a protective sweep and seize the property pending the application of a search warrant.[19]

Once in the house, officers announced themselves and Walhgren, Avitia-Enriquez, and Phillips all came down from upstairs.[20] At this point all three were detained by the agents.[21] Phillips and Avitia-Enriquez claimed to be presently employed within the home as painters, and paint on their clothing as well as painting equipment in the home corroborated their statements in this regard.[22] After detaining the three individuals found in the house, the agents began searching the living area for additional people.[23] At approximately 3:24 p.m., officers opened Avitia-Enriquez's living room space and turned on the lights.[24] The testimony of the officers is consistent with the video that ultimately was seized. The officers can be heard discussing how people can hide in unusual places. While flipping the couch cushions and searching Avitia-Enriquez's living area for individuals who may be hiding, investigator Reuter and another officer looked into a lunch pack in plain view on the coffee table in Avitia-Enriquez's living area.[25] Sometime after initially leaving the room, Avitia-Enriquez (while handcuffed) was brought back into his living space and is

---

[19] *Id.* at 37.
[20] *Id.* at 225.
[21] *Id.* at 42.
[22] Docket 68 at 6.
[23] *Id.* at 6; Docket 55 Exhibit D at 15:24:49–15:26:00 officers are seen flipping cushions of the couch in Avitia-Enriquez's living space.
[24] Docket 55 Exhibit D at 15:24:12 the officers open the doors to Avitia-Enriquez's living space and at 15:24:31 officers are seen turning the lights on the living space.
[25] Docket 82 at 96; Docket 55 Exhibit D at 15:25:59–15:26:05 the first officer is seen peering into the lunch pack and at 15:26:20–15:26:24 the second officer is peering into the lunch pack again.

*United States v. Avitia-Enriquez, et al.*     Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)     Page 5
Case 4:23-cr-00002-RRB    Document 96    Filed 05/01/24    Page 5 of 14

seen speaking with an agent.[26] A search warrant for the house was issued by Magistrate Judge Scott Oravec at 5:52 p.m.[27] During the search of the residence, evidence of drug contraband and a video camera were seized. Later at the Fairbanks Police Department, Avitia-Enriquez and Phillips were questioned by officers.[28]

### III. APPLICABLE LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[29] The Court has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes, "and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions," which are discussed in more detail below.[30] Briefly, "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officers possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."[31] Additionally, "'exigent circumstances,' including the need to prevent

---

[26] Docket 55 Exhibit D at 15:41:03 officers are seen leaving Avitia-Enriquez's living space; Docket 55 Exhibit F at 15:41:03–15:43:51 an officer is communicating with Avitia-Enriquez.
[27] Docket 82 at 103.
[28] *Id.* at 50.
[29] U.S. Const. Amend. IV.
[30] *Katz v. United States,* 389 U.S. 347, 357 (1967).
[31] *Maryland v. Buie,* 494 U.S. 325, 333 (1990).

*United States v. Avitia-Enriquez, et al.* Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55) Page 6
Case 4:23-cr-00002-RRB   Document 96   Filed 05/01/24   Page 6 of 14

the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant."[32]

The controlling burden of proof at a suppression hearing is "no greater burden than proof by a preponderance of the evidence."[33]

## IV. DISCUSSION

Warrantless searches are *per se* unreasonable, and, where a defendant makes an initial showing that a search occurred without a warrant, the burden shifts to the government to show that a search warrant exception applies.[34] It is undisputed that when Officer Byron Johnson and other law enforcement entered the residence at 379 Shannon Drive, shortly after Meath's arrest in the driveway, the officers did so without a warrant. Defendant made a sufficient showing on this issue as a threshold matter, and it is undisputed. As a result, the burden shifts to the Government to show that an exception applies.

The Government asserts that the entry was justified both as a protective sweep and under exigent circumstances to preserve the integrity of the evidence inside. It argues that officers were aware this was the second time Meath had been arrested with large amounts of drugs and a firearm leaving the Shannon Drive residence, and that Wahlgren and likely Avita-Enriquez currently were inside the residence, which was being used in Meath's drug trafficking operation. "Because officers expected that there was

---

[32] *Kentucky v. King*, 563 U.S. 452, 460 (2011).
[33] *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).
[34] *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971).

*United States v. Avitia-Enriquez, et al.*  Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)  Page 7
Case 4:23-cr-00002-RRB   Document 96   Filed 05/01/24   Page 7 of 14

additional evidence pertaining to Meath's drug trafficking operation in the residence and knew there was at least one person inside who could destroy evidence and endanger them, they entered the residence to ensure officer safety and preserve evidence pending a search warrant application."[35] They then obtained a search warrant, and ultimately secured evidence of Defendants' roles in the conspiracy which forms the basis of the current indictment.[36]

### A. Protective Sweep

"The Fourth Amendment permits a properly limited **protective sweep** in conjunction with an in-home arrest when the searching officers possess a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."[37] A protective sweep is a "quick and limited" search of the premises, which may last "no longer than it takes to complete the arrest and depart the premises." [38]

It is undisputed here that officers entered the house after arresting Meath on a valid arrest warrant in the driveway. Although a protective sweep may be justified even if the arrestee is not arrested inside their home,[39] protective sweeps serve the purpose of protecting officers from unexpected attacks *while they are arresting a suspect*.[40] As Meath

---

[35] Docket 68 at 4.
[36] *Id.* at 1.
[37] *Maryland v. Buie*, 494 U.S. 325, 333 (1990).
[38] *Buie*, 494 U.S. at 335–36.
[39] *United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir. 1989) (overruled on other grounds by *United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) ("If the exigencies to support a protective sweep exist, whether the arrest occurred inside or outside the residence does not affect the reasonableness of the officer's conduct.")).
[40] *Buie*, 494 U.S. at 333.

*United States v. Avitia-Enriquez, et al.*     Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)     Page 8
Case 4:23-cr-00002-RRB    Document 96    Filed 05/01/24    Page 8 of 14

was arrested outside of the house and no one inside the house answered the door, the Court is not persuaded that entering the house in order to do a protective sweep was necessary for officer safety related to Meath's arrest. Accordingly, the protective sweep exception to the Fourth Amendment does not justify entry into the house.

**B.     Exigent Circumstances**

"[T]he need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search."[41]  The exigent circumstances exception involves circumstances in which "a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained."[42]

According to the Affidavit of Joshua Carr in Support of an Application for a Search Warrant, officers believed that "additional evidence existed in the residence and acting under the knowledge that at least one other adult was present in the home, investigators entered the premises to secure all tangible property and persons to preserve evidence pending this application for a search warrant."[43]  Put simply, the officers reasoned that additional evidence that could easily be destroyed was likely located in the residence. This belief came from the fact that officers had found drugs in Meath's backpack, which they believed he carried from the house, in conjunction with the refusal of anyone in the

---

[41] *Kentucky v. King,* 563 U.S. at 460.
[42] *United States v. Salvador,* 740 F.2d at 758 (quoting *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir. 1979)).
[43] Docket 55-2 at 6.

*United States v. Avitia-Enriquez, et al.*　　　　　　　　　　　　　　　　　　　　Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)　　　　　　　　　　　　　　　　　　　　Page 9
Case 4:23-cr-00002-RRB     Document 96     Filed 05/01/24     Page 9 of 14

house to answer when the police knocked.[44] Furthermore, Officer Byron Johnson testified that while knocking at the front door, officers heard movement coming from inside the garage,[45] although Defendants argue that there is no mention of this movement in any of the subsequent reports.

When considering destruction of evidence, the government must prove that officers acted on probable cause and in good faith, reasonably believing from the totality of the circumstances that evidence or contraband would imminently be destroyed.[46] Moreover, because exigent circumstances imply insufficient time to obtain a warrant, the government also must show that a warrant could not have been obtained in time.[47]

Defendant Avilia-Enriquez argues that "over 2 hours elapsed from when the officers first entered the house to when their search warrant was obtained. They could have just as easily secured that warrant (if they had probable cause) waiting outside the house and question anyone leaving the house."[48] Defendant's argument does not, however, explain how this tactic would have prevented the destruction of evidence inside the home. The likelihood of the destruction of evidence is the same whether the arrest is indoors or in an outside area within the sight or hearing range of an accomplice within the residence."[49] Defendants characterize the alleged exigency as being created by the officers themselves, suggesting that the officers did not need to put themselves in harm's way by

---

[44] Docket 82 at 6, 135.
[45] *Id.* at 37.
[46] *United States v. Iwai*, 930 F.3d 1141, 1144 (9th Cir. 2019).
[47] *United States v. Lindsey*, 877 F.2d 777, 782 (9th Cir. 1989).
[48] Docket 84 at 9.
[49] *Hoyos*, 892 F.2d at 1397.

United States v. Avitia-Enriquez, et al.  Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)  Page 10
Case 4:23-cr-00002-RRB   Document 96   Filed 05/01/24   Page 10 of 14

approaching the house at all, and could have just returned later with a warrant.[50] Again, this tactic would not have prevented the destruction of evidence inside the home.

The Supreme Court has rejected the suggestion that the police merely knocking on the door creates the exigent circumstance, thereby voiding the exception.[51] The Court has said that "[l]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause."[52] "Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution."[53]

Investigators entered the premises at approximately 3:05 p.m. "to secure all tangible property and persons to preserve evidence pending an application for a search warrant of the residence."[54] A search warrant was issued at 5:52 p.m.[55] In the meantime, officers stayed inside the house with the three individuals they had detained.[56]

---

[50] Docket 83 at 24; Docket 84 at 3.
[51] See *Kentucky v. King*, 563 U.S. at 468–69 (Rejecting a "police-created exigency" doctrine where police officers are penalized for opting to knock on the door rather than immediately seeking a warrant. "If respondent's test were adopted, it would be extremely difficult for police officers to know how loudly they may announce their presence or how forcefully they may knock on a door without running afoul of the police-created exigency rule. And in most cases, it would be nearly impossible for a court to determine whether that threshold had been passed. The Fourth Amendment does not require the nebulous and impractical test that respondent proposes.").
[52] *Kentucky v. King*, 563 U.S. at 467 (citing *Hoffa v. United States,* 385 U.S. 293, 310 (1966)).
[53] *Id.*
[54] Docket 55-3 at 2.
[55] Docket 82 at 103.
[56] *Id.* at 97.

*United States v. Avitia-Enriquez, et al.*      Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)      Page 11
Case 4:23-cr-00002-RRB     Document 96     Filed 05/01/24     Page 11 of 14

Video footage from Avilia-Enriquez's personal video camera captured part of the warrantless search, which has been submitted to the Court by the defense. The Court has reviewed those videos. Officers can be seen in only one room of the house. The defense argues that "agents were captured rummaging through the house, tossing up couch cushions, and digging through personal belongings."[57] "During the 2 hour wait time, video footage shows agents continuing to go through Mr. Avitia-Enriquez's living space searching for stuff after what they claimed was a protective sweep . . . [and] an agent is captured looking through Mr. Avitia's living space, opening and looking into a cooler container on the coffee table and searching the residence with other officers, even using an iPhone charging cord they found."[58]

The Court's review of the footage yields a less dramatic description. Officers initially were actively searching for anyone hiding in large spaces, like inside the couch, and can be heard discussing the types of spaces people can hide in. Once the room is cleared, the officers visibly relax. There was drug paraphernalia in plain view at this point. The video shows officers just after 5 p.m. carefully stepping through what already was a cluttered room prior to their entry, apparently waiting for the search warrant to be granted before actively searching the premises. Officers peered into open containers and dark corners with flashlights, but obviously were careful not to perform a search of anything not in plain view. It appears that the officers were not aware they were being recorded.[59] While

---

[57] Docket 84 at 10.
[58] Id.
[59] See Supplemental Exhibit F, conventionally filed.

*United States v. Avitia-Enriquez, et al.*     Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)     Page 12
Case 4:23-cr-00002-RRB    Document 96    Filed 05/01/24    Page 12 of 14

the ends do not justify the means, the videotaped behavior of Phillips and Avitia-Enriquez stashing items here and there prior to the police entering the room is illustrative of why officers generally are concerned about the destruction of evidence in a case such as this one. As the Supreme Court has explained:

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. . . . When the police knock on a door but the occupants choose not to respond or to speak, "the investigation will have reached a conspicuously low point," and the occupants "will have the kind of warning that even the most elaborate security system cannot provide." . . . And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.
>
> Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent circumstances search that may ensue.[60]

The Court finds that exigent circumstances warranted entry of the Shannon Drive house in order to preserve destruction of evidence while waiting for a search warrant.

### C. Search Warrant

Finally, Defendants argue that the search warrant ultimately obtained was the "fruit of the poisonous tree" that was the initial warrantless search. This argument essentially is moot, but the Court acknowledges the Government's argument that the search

---

[60] *Kentucky v. King*, 563 U.S. at 469–70.

*United States v. Avitia-Enriquez, et al.*  
Order Denying Motion to Suppress (Docket 55)  
Case No. 4:23-cr-00002-RRB  
Page 13  
Case 4:23-cr-00002-RRB    Document 96    Filed 05/01/24    Page 13 of 14

warrant ultimately obtained was valid without relying on anything obtained during the warrantless entry.[61] A magistrate requires a "substantial basis" for concluding that probable cause existed.[62] The Government argues that, even if the two sentences describing the drug paraphernalia observed in plain view were removed from the warrant affidavit, there still was probable cause for a warrant: "Meath, a known drug trafficker, carried a bag containing drugs, money, and a firearm from his residence immediately prior to his arrest."[63] "In the case of drug dealers, evidence is likely to be found where the dealers live."[64]

## V. CONCLUSION

In light of the foregoing, the Motion to Suppress at Docket 55 is DENIED. A trial date setting conference previously has been scheduled for Friday, May 10, 2024, at 10:00 a.m. in Fairbanks Courtroom 1.

IT IS SO ORDERED this 1st day of May, 2024, at Anchorage, Alaska.

/s/ Ralph R. Beistline
RALPH R. BEISTLINE
Senior United States District Judge

---

[61] Docket 68 at 2.
[62] *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).
[63] Docket 68 at 10.
[64] *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

*United States v. Avitia-Enriquez, et al.*  Case No. 4:23-cr-00002-RRB
Order Denying Motion to Suppress (Docket 55)  Page 14
Case 4:23-cr-00002-RRB   Document 96   Filed 05/01/24   Page 14 of 14